## W. T. Goad v. The State.

No. 3879.     Decided February 5, 1908.

**1.—Local Option—Conflict of Testimony.**

Upon trial for a violation of the local option law, where the testimony as to the sale of the liquor was somewhat conflicting, defendant denying the sale thereof, a conviction will not be disturbed.

**2.—Same—Credibility of Witness.**

A witness may be impeached, or his veracity attacked by showing that he had

been arrested for theft, or had been indicted for it, but he can not be tried under charge of theft, and the details of the evidence narrated, where he is simply introduced as a witness.

**3.—Same—Indictment.**

Where upon trial for a violation of the local option law, the indictment followed the approved form, there was no error.

Appeal from the County Court of Hunt. Tried below before the Hon. J. W. Manning.

Appeal from a conviction of a violation of the local option law; penalty, $25 and twenty days confinement in the county jail.

The opinion states the case.

*A. J. Gates,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for violation of the local option law.

The witness Hickman, first witness for the State, testified, substantially, that along about the 13th of December, 1906, he met appellant on the public square in Greenville, and asked him if he could get him some whisky. Appellant said he would try, and told the witness that he had a package in the express office. Hickman states that he gave appellant $1.25 and appellant went away, and he (witness) went down to appellant's blacksmith shop, and after awhile appellant returned to the shop in company with another party who was a stranger to Hickman, and the stranger brought a box of whisky into defendant's blacksmith shop, where it was opened, and Hickman received one quart of whisky out of this package. He further testified that the witness Goans was with him at the time that he met appellant on the square, and that he (Hickman) borrowed 25 cents from Goans, and that Goans also gave appellant $1.25 after the package was brought to defendant's shop, and also received a quart of whisky. The cross-examination of this witness was a little rigid and not very flattering.

The witness Goans testified that he was in Greenville sometime about the 13th of December, 1906, with the witness Hickman, and met defendant on the public square; that he had some days prior to this meeting asked defendant to order him a quart of whisky when he (appellant) ordered some for himself, and that on the day he met him (appellant) on the square, appellant told him that he thought that the package had come. Goans states that he gave appellant a dollar, and told him he wanted a quart of whisky, and that appellant said to him that he had a package of whisky in the express office. He went to appellant's blacksmith shop, and in an hour or two some one, whom the witness did not know, came with the defendant, bringing a package through the rear door of appellant's shop, and it was opened and contained four quarts of whisky. The whisky was set down in the shop and witness got one

quart, appellant being present when he got it; that he himself got the quart out of the package.

Moulton testified that he was an express agent, and that the records of his office showed that appellant shipped goods through his express office during the month of December; on the 14th, 15th and 18th of December, 1906. On the 14th a gallon, on the 15th two quarts, and on the 18th a gallon. But the record did not show that he (appellant) had signed for any on the 13th of December.

Appellant testified in his own behalf, in substance, that he did not sell the whisky; that he took the money from Hickman, and that he went to some parties who were working there on the telephone lines and got them to carry the whisky down to his shop; that it did not belong to him (appellant), but belonged to the other parties, and that he paid them Hickman's money. It was also proved that Hickman had stated on one or two occasions subsequent to this transaction that he never got any; that his testimony would not in any way be injurious to appellant, and said, "You never (speaking to appellant) sold me a drop of whisky in your life, and I am going to swear it, and you need not be afraid of me." It is also shown that Hickman obtained $2.25 from appellant to pay railroad fare of a woman from Denison to Greenville as a nurse for his wife. Hickman testified that he had paid the woman, whereupon counsel for appellant asked for an instanter process for the woman to be brought into court, and Hickman changed his testimony, and admitted that he had not paid her. In this he stated: "Yes, I paid her for the $2.25 as soon as she reached Greenville. Yes, she is at my house now, Her name is .........., and she is now at my house in Greenville." At this point, attorney for appellant asked for an instanter subpœna for the woman, whereupon the witness made the following statement: "No, I have not given her the money yet, but I told her I would." Here the witness was asked the following question: "Then you swore something a few minutes ago that was not so, did you?" To which the witness reluctantly answered, yes. The witness was then asked to tell the jury whether or not he was telling the truth in his last statement or in the first statement he made concerning the giving of the money to the woman, to which he answered, "I told the truth the last time."

Bill of exceptions Nos. 2 and 3 were reserved to the refusal of the court to permit appellant to prove that the witness Hickman had committed the theft of a wrench. The details of the evidence offered are narrated in the bills. We are of opinion the court was correct. A witness may be impeached or his veracity attacked by showing that he had been arrested for theft, or had been indicted for it, or incarcerated in jail for it, but we are not cited to any authority, nor are we aware of any, that would authorize or justify the court in turning aside to try a witness on a charge of theft by proving the details of the transaction before the jury, or to prove as a fact that the witness had committed such violation of law as would render him amenable to thus being impeached. Under the decisions, this indictment, we hold, sufficiently charges a violation of the

local option law. See Stephens v. State, 97 S. W. Rep., 483; and Key v. State, 37 Texas Crim. Rep., 77.

It is contended the evidence is not sufficient to support the conviction. The evidence was all before the jury, and we do not feel justified in setting aside the verdict. Some of the testimony for the State comes in rather questionable shape, but take the whole evidence together we do not feel justified in holding that the jury were not warranted in finding a verdict.

The judgment is therefore affirmed.

*Affirmed.*