**Salvador C. ADIN, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–85–0555–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 26, 1987.

Percy Foreman, Foreman & DeGeurin, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Dinah Bailey, Wilbur Aylor, Harris County Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and DUGGAN and LEVY, JJ.

## OPINION

EVANS, Chief Justice.

A jury found appellant guilty of aggravated robbery and assessed punishment at 15 years confinement and an $8,360 fine. We affirm.

The appellant does not challenge the sufficiency of the evidence to support his conviction. In four points of error, he asserts that the trial court erred in refusing to instruct the jury to disregard two allegedly improper questions, which the prosecutor asked the appellant during cross-examination, and in refusing appellant's motion for a mistrial based on the asking of such questions.

The complainant was the assistant manager of a Ninfa's Restaurant in Houston, where two of the appellant's brothers, Pablo and Jesus Adin, were also employed. On the morning of the robbery, the complainant left the restaurant in her car to mail some credit card receipts and to go to the bank to deposit the prior evening's earnings. On one prior occasion, the appellant's brother, Pablo, had gone with the complainant to make the daily deposit, but on this particular morning, the complainant left the restaurant alone. At that time Jesus Adin was at the restaurant, but Pablo had not arrived.

When the complainant drove up to a mailbox to deposit the credit card receipts, she saw a man standing by a nearby light pole. She placed the receipts in the mailbox and started to back up her car, at which time the man ran up to her car window. The man held a gun to her left side, told her to "shut up," and then grabbed her purse and a money bag containing over $8,000 in cash.

As soon as the man ran away, the complainant returned to the restaurant and called the police. When the police arrived, she told them that the robber looked like Pablo Adin. She also asked the appellant's brother, Jesus, if he had any brothers other than Pablo, and Jesus replied that he did not. After obtaining the appellant's address from her files, the complainant accompanied the police to Pablo's residence. There, they found that another officer had arrested Pablo, handcuffed him, and placed him in a patrol car. When the complainant saw Pablo, and the police asked her if he was the robber, she said that he "looked like" the man. A short while later, the police asked the complainant to look at another man, who the police also found at the residence. She walked up to the residence, and on seeing the appellant standing in the doorway, immediately recognized him as the person who had robbed her. When the complainant saw the appellant, she started crying, grabbed her stomach in pain, and ran and hid behind the police car.

The police obtained a consent to search appellant's residence and there found a pair of sunglasses and a jacket, which complainant identified as having been worn by the robber.

The appellant testified in his own behalf, presenting the alibi defense that he was home at the time of the robbery. His testimony was corroborated by the testimony of his brother, Pablo, and his sister-in-law, Teresa.

On this appeal, the appellant contends that two questions asked by the prosecutor during his cross-examination of appellant, were so prejudicial and inflammatory that his conviction must be reversed. He complains that one of the questions was an improper assertion of an extraneous illegal act, namely that appellant was an illegal alien, and that the other question implied that the appellant had been incarcerated in a federal correctional facility for drug addicts.

■ Rarely is a conviction reversed solely because an improper question is asked of the defendant as a witness. *Guzmon v. State*, 697 S.W.2d 404, 408 (Tex.Crim.App. 1985); *Gonzales v. State*, 685 S.W.2d 47, 49 (Tex.Crim.App.1985); *Sensabaugh v. State*, 426 S.W.2d 224, 227 (Tex.Crim.App.1968). To require a reversal, the question must be *obviously* harmful to the defendant. In deciding the question of obvious harm, the reviewing court must consider the relationship of the allegedly improper question to the other testimony presented. *Guzmon*, 697 S.W.2d at 408.

When the appellant first took the stand in his own defense, he explained that he could speak and understand only "a little English" and therefore was testifying through an interpreter. He confirmed the previous testimony of his brother and sister-in-law that he had been at home when

the offense was committed, and he indicated that he had been surprised when the complainant accused him of being the robber.

■ On cross-examination, the appellant testified that he came to the United States from Mexico, and that he was still a resident of Jalisco, Mexico. He also testified that he had lived for three years in Corona, California. At that point, the prosecutor asked the appellant if Corona is where the California Federal Correctional Facility for drug addicts is located. The appellant's counsel objected to the question on the ground that it was irrelevant, and the court sustained his objection. But the court refused to instruct the jury to disregard the question or to order a mistrial. The prosecutor then moved to another subject.

The prosecutor's question was clearly irrelevant, but the trial court promptly sustained the appellant's objection on that ground. The court's ruling prevented the prosecutor from obtaining the appellant's answer to the question, and precluded any further inquiry into an irrelevant subject. We conclude that there is no reasonable possibility that the asking of the question contributed to the appellant's conviction, because the minds of the average jury would not have found the State's case significantly less persuasive had the question not been asked. *See Vanderbilt v. State*, 629 S.W.2d 709, 724 (Tex.Crim.App.1981).

■ On redirect examination, the appellant, in response to the questioning of his counsel, testified that he had "never" in his life, "in this state, in California, in Jalisco or anywhere else," been charged or convicted of a criminal offense, and that this was the "first time" he had ever been charged with a violation of the law. He said that until he was charged with the instant robbery, he had been going about his work and his life, "following the law," as he always had.

On recross examination, the prosecutor questioned the appellant as follows:

Q. You say you never been [sic] convicted in this state or any other state or any other country of any offense against the laws of those states or countries?

A. No, sir.

Q. Don't you know that being an illegal alien in this country is the commission of an offense against the United States?

[Appellant's counsel]: I object.

THE COURT: Okay. That will be sustained.

[Appellant's counsel]: Your Honor, I am going to move for a mistrial.

THE COURT: Overruled.

[Appellant's counsel]: I would like to perfect—Well, since my ruling has already been sustained, I want the Court to instruct the Prosecutor.

THE COURT: No.

We hold that the prosecutor's question was not improper, because the appellant's own testimony left the impression that he had always lived within the law and that "never" before had he committed a criminal offense. Because of the appellant's "blanket" assertion of prior lawful behavior, the prosecutor's question was a legitimate inquiry into the appellant's commission of an extraneous illegal act. *See Reese v. State*, 531 S.W.2d 638, 640 (Tex. Crim.App.1976); *Hoffman v. State*, 514 S.W.2d 248, 254 (Tex.Crim.App.1974).

We overrule the appellant's four points of error, and affirm the trial court's judgment.

LEVY, J., dissenting.

LEVY, Justice, dissenting.

I would sustain the appellant's points of error three and four, complaining that the prosecutor unnecessarily and improperly propounded a question implying that appellant had been incarcerated in the federal correctional facility for drug addicts in Corona, California.

The following excerpt is from the cross-examination of appellant by the prosecutor:

Q: You lived in Corona for three years; is that correct?

A: Yes, sir.

Q: *Is that where the Federal Correctional Facility is for drug addicts in California?* (Emphasis supplied.)

[APPELLANT'S COUNSEL:] Your Honor, I am going to object. That is irrelevant.

[THE COURT:] That will be sustained.

[APPELLANT'S COUNSEL:] Your Honor, I am going to ask the Court to instruct the jury to disregard it.

[THE COURT:] No.

[APPELLANT'S COUNSEL:] Your Honor, at this time I ask the Court to rule for a mistrial in this case.

[THE COURT:] It will be denied.

Although, as the majority admits, the question was "clearly irrelevant," *the trial court refused to instruct the jury to disregard it,* thereby leaving before the jury the suggestion that, even though the subject was inadmissible, appellant might also be a narcotics addict recently released from a federal prison, or at least have some connections with a federal institution for drug addicts.

In my view, this amounts to a deliberate and bad faith injection of matter by the prosecutor of such character as to suggest the impossibility of withdrawing the impression produced on the jurors minds. *See Henderson v. State,* 617 S.W.2d 697 (Tex.Crim.App.1981); *Fentis v. State,* 528 S.W.2d 590 (Tex.Crim.App.1975); *Boyde v. State,* 513 S.W.2d 588 (Tex.Crim.App.1974); *Sensabaugh v. State,* 426 S.W.2d 224 (Tex. Crim.App.1968). The question, in fact, is *so* irrelevant and prejudicial that it seems calculated to deny the accused a fair and impartial trial *upon the merits of the case alone. See Mounts v. State,* 148 Tex. Crim.R. 149, 185 S.W.2d 731 (1945).

Because the trial court refused to render the question harmless by instructing the jury to disregard it, *Brown v. State,* 692 S.W.2d 497 (Tex.Crim.App.1985), I think that reversal is justified to reaffirm the critical importance of convicting the accused *only upon the evidence presented,* without attempting to inflame or prejudice the minds of the jurors. *Boyde v. State,* 513 S.W.2d at 591, 593; *Stein v. State,* 492 S.W.2d 548, 551 (Tex.Crim.App.1973).

As to the harmfulness of the question, the correct inquiry is "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless *beyond a reasonable doubt." Delaware v. Van Arsdall,* — U.S. ——, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).

I cannot say that the error was harmless beyond a reasonable doubt, particularly in the punishment phase of the trial, and would therefore reverse the judgment of the trial court.